



FILED

FEB - 7 2008

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF CALIFORNIA

3    SACRAMENTO DIVISION

4

5    In re:                              )
                                         )
6    PONCE NICASIO BROADCASTING,         )    Case No. 04-26255-B-7
     INC.,                               )
7                                        )
           Debtor.                       )
8    _____    )
                                         )
9    BRUCE FOX,                          )
                                         )    Adv. No. 06-02227-B
10          Plaintiff,                   )
                                         )
11   vs.                                 )    D.C. No. SOC-1
                                         )
12   PONCE NICASIO BROADCASTING,         )
     INC, et al.,                        )
13                                       )
           Respondent(s).                )    Submitted August 21, 2007
14   _____    )

15

16

17                  **MEMORANDUM DECISION**

18         Moving parties Daniel Briggs, individually and as owner of

19   the Daniel Briggs IRA; Jordan Briggs, individually and as owner

20   of the Jordan Briggs IRA; Jessica Briggs, individually and as

21   owner of the Jessica Briggs IRA, Jordan Briggs, Jessica Briggs

22   (Jordan Briggs and Jessica Briggs appearing through their parent

23   Daniel Briggs); John Bailey individually and as owner of the John

24   Bailey IRA; Kathleen Bailey, individually and as owner of the

25   Kathleen Bailey IRA; Kristine C. Bailey, individually and as

26   owner of the Kristine Bailey IRA; Steven C. Bailey as parent and

27

28                            -1-

guardian for Kate Bailey, individually and as owner of the Kate Bailey IRA, and Jerry Zanelli (the "Former Partners") ask the court to grant them summary judgment in this adversary proceeding.  Plaintiff Bruce Fox opposes the motion.  For the reasons stated herein, the Former Partners' motion for summary judgment filed on June 26, 2007 (Dkt. 80) (the "Former Partners' PNB Inc. SJ Motion") is granted.

The Former Partners' PNB Inc. SJ Motion was filed on June 26, 2007, initially set for hearing on July 24, 2007.  After one continuance, the court held a final hearing in Sacramento, California on August 21, 2007.  At the conclusion of the hearing, the matter was taken under submission.

This is a core proceeding and the court has jurisdiction over this matter.  28 U.S.C. §§ 1334 and 157.  Venue is proper in this court under 28 U.S.C. § 1409.  There is no dispute concerning jurisdiction, venue or core status.

The following constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

## PROCEDURAL HISTORY

On June 17, 2004 debtor Ponce Nicasio Broadcasting, Inc. ("PNB Inc.") commenced the above captioned voluntary chapter 7 case (the "PNB Inc. Case").  Thomas A. Aceituno was appointed trustee.  On September 28, 2005, the court approved an agreement between the trustee and Plaintiff by which the trustee assigned his avoidance powers in the PNB Inc. Case to Plaintiff.

On June 17, 2004 debtor Ponce Nicasio Broadcasting, LP ("PNB LP"), a limited partnership of which PNB Inc. was the general partner, also commenced a voluntary chapter 7 case, No. 04-26256-B-7 (the "PNB LP Case").  Thomas A. Aceituno was appointed trustee.  On September 28, 2005, the court approved an agreement between the trustee and Plaintiff by which the trustee assigned his avoidance powers in the PNB LP Case to Plaintiff.

On June 16, 2006, Plaintiff filed two identical (except for case references, caption, etc.) complaints in the PNB Inc. Case and the PNB LP Case.  The complaint in the PNB Inc. Case commenced the instant adversary proceeding, and the complaint in the PNB LP case commenced Adversary Proceeding 06-2228-B. Although both complaints lump PNB Inc. and PNB LP together in the term "Debtors," the above-captioned complaint seeks in part avoidance of alleged fraudulent transfers made by PNB Inc. to the Former Partners.  Former partner Daniel Briggs as parent and guardian of Jordan Briggs and Jessica Briggs filed an answer on November 9, 2006.  Former partner John Bailey, Kathleen Bailey, Kristine Bailey, Steven C. Bailey, and Kate Bailey filed an answer on December 1, 2007.  On April 25, 2007 the court struck Plaintiff's Notice of Preservation of Jury Trial Demand.

The Former Partners have also filed a motion for summary judgment in Adversary Proceeding 06-2228-B (the "Former Partners' PNB LP SJ Motion") that is identical to the Former Partners' PNB Inc. SJ Motion.  The court has rendered a decision on the Former

-3-

1 | Partners' PNB LP SJ Motion concurrently with its decision on this
2 | Former Partners' PNB Inc. SJ Motion.

3 |

4 | **I.  FACTS**

5 | The dispute between Plaintiff and the Former Partners arises
6 | out of a business relationship among Plaintiff, PNB LP, and PNB
7 | Inc.  PNB LP was formed for the purpose of managing a local
8 | television station.  PNB Inc. was formed to act as managing and
9 | general partner of PNB LP.  In the mid-to-late 1990s PNB LP
10 | entered into negotiations to sell the television station to
11 | Paxson Communications ("Paxson").  PNB LP also entered into three
12 | agreements with Plaintiff, an Affiliation Agreement (dated May
13 | 26, 1995), a Time Brokerage Agreement (dated September 6, 1996),
14 | and an Option Agreement (dated September 6, 1996).

15 | Following the execution of the three agreements, Plaintiff
16 | and PNB LP disagreed over whether Plaintiff was entitled to
17 | commissions based on the agreements.  Plaintiff sued PNB LP and
18 | PNB Inc.  In May 1998 El Dorado County Superior Court entered
19 | judgment in favor of Plaintiff, awarding him $38,333.00 under the
20 | Affiliation Agreement and $53,550.00 under the Time Brokerage
21 | Agreement.  The superior court also granted declaratory relief
22 | stating that Plaintiff would be entitled to a three percent
23 | commission under the terms of the Option Agreement in the event
24 | that the television station was sold "under" the terms of the
25 | September 6, 1996 Option Agreement.  The California Court of
26 | Appeal affirmed the trial court decision on April 17, 2000, and

27 |

28 | -4-

on May 16, 2000 PNB LP and PNB Inc. satisfied the money judgments.

The declaratory relief awarded by the superior court, however, continued to be a point of contention between Plaintiff, PNB LP and PNB Inc.  Concurrently with the litigation between Plaintiff and PNB LP and PNB Inc., PNB LP had also been involved in litigation with Paxson.  Paxson and PNB LP settled their dispute in March, 2000.  The sale of the television station closed in June, 2000.  PNB LP then took the position that the sale of the television station did not occur "under" the September 6, 1996 Option Agreement and that Plaintiff was not entitled to a commission.  Plaintiff disagreed and sought to enforce the declaratory judgment.  On June 21, 2000, Plaintiff applied for and obtained an order for examination from the El Dorado County Superior Court.  The order for examination was issued on June 22, 2000.

PNB LP then applied for a temporary restraining order to halt Plaintiff's attempt to collect the commission.  On August 28, 2005 the El Dorado County Superior Court vacated its prior order for examination and enjoined Plaintiff from taking further action to collect the commission.  The superior court also directed the parties to proceed by evidentiary hearing under California Civil Procedure Code Section 724.050 to resolve the issue of whether Plaintiff's judgment had been satisfied.  The date for the evidentiary hearing was set for March 13, 2001.

1       Prior to obtaining the restraining order PNB LP had started

2  a process by which it intended to buy out the Former Partners,

3  who were limited partners of the PNB LP at the time.    PNB LP

4  hired an accountant to value the capital balance of the

5  partnership and assess the value of a one percent interest.    The

6  preliminary capital balance was valued at $13,709,703.38.    Each

7  one percent interest was initially valued at $137,097.03.    PNB LP

8  then reduced the value of each one percent interest to

9  $130,097.03, so as to set aside $700,000.00 in the event that

10  Plaintiff was to be awarded a commission following the March 2001

11  evidentiary hearing.    The Former Partners agreed to accept the

12  reduced valuation of their interests.    The Former Partners held

13  30.6 percent of the limited partnership interests at the time of

14  the buyout transaction.    PNB LP transferred funds from its

15  accounts to the Former Partners.    In exchange for the transfer of

16  funds to each of the Former Partners, PNB LP received a transfer

17  of the recipient Former Partners' limited partnership interest,

18  and each recipient Former Partner executed a and delivered to PNB

19  LP a mutual and general release and waiver.    The funds

20  transferred to the Former Partners totaled $3,980,969.12.    The

21  buyout transactions were concluded as of August 31, 2000.

22       Following the transfers to the Former Partners, PNB Inc.

23  held funds totaling $446,871.43 in accounts under its name.    PNB

24  LP held funds totaling $3,998.567.55 in accounts under its name.

25  Thereafter, PNB Inc. and PNB LP used the remaining funds to make

26  stock purchases and to purchase investments on the stock market.

27

28                                    -6-

1  Some funds were also disbursed from one or both PNB LP and PNB
2  Inc. to partners who remained in the partnership.  Plaintiff also
3  asserts that the disbursements of funds to the remaining partners
4  are also fraudulent transfers, but whether those transfers were
5  fraudulent is the subject of the identical summary judgment
6  motions filed under docket control number PP-2 on the court's
7  dockets in the above-captioned PNB Inc. Case and in the PNB LP
8  Case.

9  　　　As of the end of 2000, the stock market investments began a
10  decline in value that would continue for over a year.  As of the
11  end of 2000, PNB Inc. and PNB LP held a total of approximately
12  $2,000,000.00 in their accounts.  As of the end of March 2001,
13  PNB Inc. and PNB LP collectively held a total of approximately
14  $1,300,000.00 in their accounts.  As of June 2001, these assets
15  had appreciated to $1,800,000.00.  As of August 2001, PNB Inc.
16  and PNB LP held a total of approximately $900,000.00 in their
17  accounts.  During the latter half of 2001, the assets of PNB LP
18  and PNB Inc. dwindled to almost nothing.

19  　　　In August 2001, Plaintiff filed another action in El Dorado
20  County Superior Court, seeking additional payment under the Time
21  Brokerage Agreement based on the passage of time from the May
22  1998 judgment.  The superior court entered judgment for Plaintiff
23  in the amount of $77,350.00 in July 2003.

24  　　　Also in July 2003 the El Dorado County Superior Court
25  concluded proceedings under California Civil Procedure Code
26  Section 724.050, finding that the sale of the television station
27
28  　　　　　　　　　　　　　　　　-7-

1  from PNB LP to Paxson occurred "under" the Option Agreement.    The

2  superior court awarded Plaintiff $531,750.00 plus interest.

3  However, by the time Plaintiff obtained this money judgment,

4  neither PNB LP nor PNB Inc. had sufficient assets to satisfy the

5  judgment.    Both PNB LP and PNB Inc. commenced voluntary

6  bankruptcy cases in June 2004 following Plaintiff's further

7  attempts to enforce the money judgment.

8

9                        **II.    ANALYSIS**

10                       **A.    Summary Judgment**

11      Plaintiff has filed the above-captioned adversary proceeding

12  as assignee of the trustee in the PNB Inc. Case.    Thus, this

13  adversary proceeding seeks to set aside transfers made by PNB

14  Inc. to various parties, including the Former Partners.

15  Plaintiff asserts that transfers by PNB Inc. to the Former

16  Partners were sham transactions and were conducted for the sole

17  purpose of fraudulently attempting to remove assets of PNB Inc.

18  from his reach before he could successfully obtain and enforce a

19  money judgment.    The Former Partners, not surprisingly, disagree.

20  The Former Partners request that the court enter summary judgment

21  in their favor, arguing that there is no genuine dispute of

22  material fact as the fraudulent nature of any PNB Inc. transfers

23  and that they are entitled to judgment as a matter of law.

24      Pursuant to Federal Rule of Civil Procedure 56(c), made

25  applicable to this proceeding by Federal Rule of Bankruptcy

26  Procedure 7056, the moving party on a motion for summary judgment

27

28                              -8-

1  must demonstrate that there is no genuine dispute of material
2  fact and that the movant is entitled to judgment as a matter of
3  law.  Fed R. Civ. P. 56(c).

4      The initial burden of showing the absence of a material
5  factual issue is on the moving party.  Celotex Corp. v. Catrett,
6  477 U.S. 317, 323 (1986)("a party seeking summary judgment always
7  bears the initial responsibility of informing the district court
8  of the basis for the motion"); De Horney v. Bank of America Nat'l
9  Trust & Sav. Assoc., 879. F.2d 459, 464 (9th Cir. 1989).  If the
10 moving party would not ultimately bear the burden of persuasion
11 at trial, the movant may satisfy this burden by showing that the
12 record lacks substantial evidence supporting the nonmovant's
13 claim.  Celotex, 477 U.S. at 324-26.  The movant is not required
14 to show that it is entitled to relief on each and every element
15 of the claim for relief.  Instead, if the movant can show that
16 the plaintiff cannot meet the plaintiff's burden of proving a
17 single necessary element of the first claim for relief, then the
18 movant can prevail.  See Adickes v. S.H. Kress & Co., 398 U.S.
19 144, 158-60 (1970).

20     However, if the movant would ultimately have the burden of
21 persuasion on an issue, such as successfully raising an
22 affirmative defense to the action, the movant must shoulder the
23 burden usually allocated to the plaintiff by showing evidence
24 that no reasonable jury could disregard.  See Edison v. Reliable
25 Life Ins. Co., 664 F.2d 1130, 1131 (9th Cir. 1981); Herndon v.

1  <u>Massachusetts Gen. Life Ins. Co.</u>, 28 F. Supp. 379, 382 (W.D. Va.
2  1998).

3      Once the movant has met its burden of production, the burden
4  shifts to the nonmovant to show that there is in fact a genuine
5  issue for trial.  The nonmoving party must identify specific
6  facts, supported by evidence, affidavits, depositions,
7  interrogatories, sworn or certified copies of documents, or other
8  material contemplated by Federal Rule of Civil Procedure 56(e),
9  which articulate and illustrate the presence of a genuine issue
10  requiring a trial.  Fed R. Civ. P. 56(e); <u>Celotex</u>, 477 U.S. at
11  324.  The evidence presented by the nonmovant must be substantial
12  and the court must consider the nonmovant's substantive burden of
13  persuasion at trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.
14  242, 252 (1986).  Mere assertions do not constitute facts
15  sufficient to require a trial.  Restating a pleading, submitting
16  new pleadings, or simply making assertion by legal memorandum or
17  even by affidavit do not set forth specific facts requiring a
18  need for trial.  The nonmovant must demonstrate that there will
19  be testimonial, documentary, or other evidence to support the
20  claim.  <u>See</u> <u>Celotex</u>, 477 U.S. at 324 (1986); <u>Gasaway v.</u>
21  <u>Northwestern Mut. Life Ins. Co.</u>, 26 F.3d 957, 959-60 (9th Cir.
22  1994).  And "[b]ecause 'credibility determinations, the weighing
23  of the evidence, and the drawing of legitimate inferences from
24  facts are jury functions, not those of a judge', '[t]he evidence
25  of the non-movant is to be believed, and all justifiable

26

27

28                          -10-

1  inferences are to be drawn in his favor.'" <u>Giles v. GMAC</u>, 494

2  F.3d 965, 872 (9th Cir. 2007)(quoting <u>Anderson</u>, 391 U.S. at 255).

3      In addition to showing that there are no genuine issues of

4  material fact that require trial, the movant must also show that

5  it is legally entitled to judgment in its favor.  And to defeat

6  summary judgment, the nonmovant must articulate a viable legal

7  theory that entitles it to relief should it prevail on the facts

8  at trial.  "The showing of a 'genuine issue for trial' is

9  predicated upon the existence of a legal theory which remains

10 viable under the asserted version of the facts, and which would

11 entitle the party opposing the motion (assuming his version to be

12 true, to a judgment as a matter of law."  <u>Mc Guire v. Columbia</u>

13 <u>Broadcasting System, Inc.</u>, 399 F.2d 902, 902 (9th Cir. 1968).

14

15                    **B. Fraudulent Transfer**

16     Both Plaintiff and the Former Partners agree that Plaintiff

17 is barred from bringing an action to avoid the transfers in

18 dispute here under 11 U.S.C. Section 548(a), as that section is

19 limited to avoidance of transfers made within one year of the

20 date of the filing of the petition in the PNB Inc. Case.  The

21 disputed transfers here occurred in 2000; the PNB Inc. Case was

22 commenced on June 17, 2004.  Instead, all parties agree that

23 Plaintiff may proceed pursuant to California state law governing

24 fraudulent transfers, as permitted by 11 U.S.C. Section

25 544(b)(1), which allows the trustee to avoid any transfer of an

26

27

28                              -11-

interest of PNB Inc. in property that is voidable under
applicable law by a creditor holding an allowed unsecured claim.

Whether the transfer of an interest or an asset of PNB Inc.
to the Former Partners constitutes a fraudulent transfer in this
proceeding is governed by California's version of the Uniform
Fraudulent Transfer Act (the "UFTA"), codified in California
Civil Code Section 3439, et seq.  The UFTA covers transfers that
are fraudulent because they were made with actual intent to
hinder, delay, or defraud creditors, and transfers that are
constructively fraudulent because they were made without
receiving reasonably equivalent value in exchange and the debtor
was insolvent at that time or became insolvent as a result of the
transfer.  An essential element of a cause of action brought
under the California UFTA that seeks the avoidance of or other
remedies related to an allegedly fraudulent transfer is the
existence of an actual transfer made by the debtor to a third
party.[1]

A transfer may also be constructively fraudulent with
respect to a creditor whose claim arose before or after the
transfer if the transfer is made without receiving a reasonably
equivalent value in exchange for the transfer, and the debtor
either was engaged or was about to engage in a business or a
transaction for which the remaining assets of the debtor were

---

[1]The court notes that the California UFTA also provides for
a cause of action for remedies related to obligations
fraudulently incurred by the debtor.  Here, however, Plaintiff
only seeks to avoid fraudulent transfers.

-12-

unreasonably small in relation to the business or transaction, or the debtor intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.  See Cal Civ. Code. § 3439.04(a)(2).  A transfer may be constructively fraudulent with respect to a creditor whose claim arose before the transfer was made if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or became insolvent as a result of the transfer.  See Cal. Civ. Code § 3439.05.

Pursuant to California Civil Code Section 3439.04(a)(1), a transfer is fraudulent as to a creditor whose claim arose either before or after the transfer was made if the transfer was made with "actual intent to hinder, delay, or defraud any creditor of the debtor."  Cal Civ. Code § 3439.04(a)(1).  "Actual intent" is informed by a non-exclusive list of eleven factors listed under Section 3439.04(b).  The eleven factors include:

(1) Whether the transfer or obligation was to an insider.
(2) Whether the debtor retained possession or control of the property after the transfer.
(3) Whether the transfer or obligation was disclosed or concealed.
(4) Whether before the transfer was made or obligation was incurred, the debtor was sued or threatened with suit.
(5) Whether the transfer was of substantially all the debtor's assets.
(6) Whether the debtor absconded.
(7) Whether the debtor removed or concealed assets.
(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of

-13-

the asset transferred or the amount of the obligation incurred.

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

Cal Civ. Code § 3439(b)(1)-(11).  The eleven factors were added to the statute in 2004.  Pursuant to Section 3439.04(c), the addition of the factors to Section 3439 do not constitute a change in applicable law, but are instead declaratory of it and are not intended to affect prior judicial decisions interpreting the statute.  The eleven factors do not "create a mathematical formula to establish actual intent.  There is no minimum number of factors that must be present before the scale tips in favor of finding actual intent to defraud.  [The] list of factors is meant to provide guidance to the trial court, not compel a finding one way or the other."  Filip v. Bucurenciu, 129 Cal. App. 4th 825, 834 (2005).

The statute also provides a defense to a fraudulent transfer action.  Pursuant Section 3439.08(a), a transfer is not voidable against a person who took in good faith and for reasonably equivalent value or against any subsequent transferee or obligee taking from such a person.  Cal. Civ. Code § 3439.08(a).

-14-

**C. The Former Partners Are Entitled to Summary Judgment Because Plaintiff Has Not Shown That PNB Inc. Made Transfers to the Former Partners**

In this case, the court finds that the Former Partners are entitled to summary judgment in this adversary proceeding, but for a different reason than those argued by the Former Partners. The complaint in this adversary proceeding was filed in the PNB Inc. Case. Plaintiff seeks to avoid transfers made by PNB Inc. to the Former Partners that he contends are fraudulent under California Civil Code Section 3439 et. seq.

As to this adversary proceeding, however, Plaintiff has failed to come forward with any evidence that PNB Inc. made any transfers to the Former Partners. In order for a transfer to be deemed fraudulent, there must first be an actual transfer to be subjected to the analysis. Plaintiff has not shown any evidence of transfers made by PNB Inc. to the Former Partners.

The only evidence in the record of the actual transfers made to the Former Partners indicates that PNB LP, not PNB Inc., transferred funds to the Former Partners when PNB LP bought out the Former Partners' limited partnership interests. The Former Partners have submitted evidence that the funds they received were in connection with the redemption of their limited partnership interests by PNB LP. As the Former Partners have set forth in their motion, the sale of the television station managed by PNB LP was finalized by agreement between PNB LP and Paxson Communications. Pursuant to the capital balance calculation of PNB LP performed by Robert Bell, the sale of the television

-15-

station to Paxson generated $17,725,000.00 in income for PNB LP.
After taking into account negative capital balances and net
losses for fiscal years 1995-1999 and through April 2000 totaling
$3,136.843.00, cost of license, net depreciation for equipment,
and the net values of stocks held by PNB LP, Bell reached a
preliminary capital balance of $13,709,703.38 as of June 30,
2000.  (Dkt. 87 at 26).  This amount was further reduced by
$700,000.00 to $13,009,703.38.  The capital balance was used to
compute the value of a one percent interest in PNB LP, and the
value of a one percent interest was used to calculate the amount
of the transfers received by each of the Former Partners in
exchange for their limited partnership interests and release.

The foregoing evidence points to transfers made by PNB LP
from the income that it derived from the sale of the television
station.  There is no evidence that indicates that PNB Inc. made
any transfers to the Former Partners, and Plaintiff has not come
forward with any such evidence.  Plaintiff does assert in his
opposition that PNB Inc. "repurchased all of its own stock" (Dkt.
96 at 7), but that statement is unsupported by the evidence.
Plaintiff presents no evidence that any transfer of money or
other value from PNB Inc. to any of the Former Partners actually
occurred.  In the deposition testimony of Ron V. Briggs, which
Plaintiff has submitted in support of his opposition, Briggs
states that the Former Partners sold their limited partnership
interests to PNB LP,

-16-

"[a]nd if [the Former Partners] had any corresponding
shares of stock, or had any shares of stock in general
— I'm not saying they did, mind you, I'm saying if they
did — those two [sic] were given back.  And they were
bought back using this formula. . . . All the shares of
stock were given back to, signed over and back in
treasury of Ponce, Inc."

(Dkt. 96 at 30).  Nowhere in the excerpted deposition testimony
does Ron V. Briggs reference any specific transfer from PNB Inc.
to the Former Partners.  Plaintiff provides no other evidence of
any transaction by which PNB Inc. purchased any stock from the
Former Partners, either in the form of the Ron Briggs deposition
or the declaration of Jeffrey Rogers, Plaintiff's expert.
Moreover, Plaintiff provides no evidence that any of the Former
Partners owned any stock in PNB Inc. at all.  At best, the
evidence in the record shows that <u>if</u> any of the Former Partners
owned shares in PNB Inc., those shares were returned to PNB Inc.
upon the receipt of transfers from PNB LP that bought out the
Former Partners' interests.  There is no evidence that
consideration was received from PNB Inc. in exchange for the
return of any shares that the Former Partners <u>may</u> have held.

As the only evidence in the record shows that the transfers
received by the Former Partners were received from PNB LP and not
PNB Inc., Plaintiff cannot sustain any claim for avoidance of a
fraudulent transfer in this adversary proceeding.  As a result,
Plaintiff, as assignee of the avoiding powers of the trustee in

-17-

the PNB Inc. Case, can only avoid transfers made by PNB Inc. Although Plaintiff and the Former Partners tend to conceptualize PNB LP and PNB Inc. as a single entity, referring to them collectively as "Debtors," "PNB," "Ponce Nicasio," or simply "Ponce," that conceptualization, while perhaps convenient, is not legally sufficient for determining whether the alleged transfers are avoidable.  There are two debtor entities with differing characteristics and financial conditions.  Because Plaintiff has failed to show any evidence of transfers made by PNB Inc. to the Former Partners that can be avoided as fraudulent transfers, Plaintiff has failed to sustain his burden of showing substantial evidence that raises a genuine issue of material fact as to any of his claims for relief in this adversary proceeding.

### G. The Former Partners Are Entitled to Summary Judgment on Plaintiff's Claim for Turnover

Plaintiff's complaint also seeks turnover of the funds that he alleges were fraudulently transferred to the Former Partners by PNB Inc.  Because the court has concluded that Plaintiff shall take nothing by his claim seeking avoidance of the alleged transfers, the Former Partners are also entitled to summary judgment that Plaintiff take nothing by his claim for turnover.

### Conclusion

For the reasons stated in the foregoing memorandum decision, The Former Partners are entitled to summary judgment on

-18-

1  Plaintiff's claim for avoidance under California Civil Code
2  Sections 3439.04(a)(1), (a)(2) and 3439.05 and on Plaintiff's
3  claim for turnover, as the court finds that there is no genuine
4  dispute of material fact as to those claims for relief, and the
5  Former Partners have shown that they are entitled to judgment as
6  a matter of law that Plaintiff take nothing by those claims.

7      The court will issue a separate order.

8
9  Dated:  FEB - 7 2008

                                    _Thomas C. Holman_
10
                                    Thomas C. Holman
11                                  United States Bankruptcy Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                          -19-