

FILED

FEB - 7 2008

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re:                              )
                                    )
PONCE NICASIO BROADCASTING,         )   Case No. 04-26255-B-7
INC.,                               )
                                    )
        Debtor(s).                  )
_____        )
                                    )
BRUCE FOX,                          )
                                    )   Adv. No. 06-02227-B
        Plaintiff,                  )
                                    )
vs.                                 )   D.C. No. PP-2
                                    )
PONCE NICASIO BROADCASTING,         )
INC, et al.,                        )
                                    )
        Respondent(s).              )   Submitted August 21, 2007
_____        )

**MEMORANDUM DECISION**

Moving parties Ron V. Briggs, Brian Briggs, Ronald J. Briggs, and Alexander Briggs (collectively, the "Briggs"), individually and on behalf of their individual retirement accounts, ask the court to grant them summary judgment in this adversary proceeding. Plaintiff Bruce Fox opposes the motion. For the reasons stated herein, the Briggs' motion for summary judgment filed on June 26, 2007 (Dkt. 90) (the "Briggs' PNB Inc. SJ Motion") is granted in part and denied in part. The court grants summary judgment in favor of Alexander Briggs on all of

-1-

Plaintiff's claims for relief.  The court denies summary judgment as to Ron V. Briggs, RJ Briggs, and Brian Briggs.

The Briggs' PNB Inc. SJ Motion was filed on June 26, 2007, initially set for hearing on July 24, 2007.  After one continuance, the court held a final hearing in Sacramento, California on August 21, 2007.  At the conclusion of the hearing, the matter was taken under submission.

This is a core proceeding and the court has jurisdiction over this matter.  28 U.S.C. §§ 1334 and 157.  Venue is proper in this court under 28 U.S.C. § 1409.  There is no dispute concerning jurisdiction, venue or core status.

The following constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

## PROCEDURAL HISTORY

On June 17, 2004 debtor Ponce Nicasio Broadcasting, Inc. ("PNB Inc.") commenced the above captioned voluntary chapter 7 case (the "PNB. Inc. Case").  Thomas A. Aceituno was appointed trustee.  On September 28, 2005, the court approved an agreement between the trustee and Plaintiff by which the trustee assigned his avoidance powers in the PNB Inc. Case to Plaintiff.

On June 17, 2004, debtor Ponce Nicasio Broadcasting, LP ("PNB LP") a limited partnership of which PNB Inc. was the general partner, also commenced a voluntary chapter 7 case, no. 04-26256-B-7 (the "PNB LP Case").  Thomas A. Aceituno was appointed trustee.  On September 28, 2005, the court approved an

agreement between the trustee and Plaintiff by which the turstee assigned his avoidance powers in the PNB LP case to Plaintiff.

On June 16, 2006, Plaintiff filed two identical (except for case references, caption, etc.) complaints in the PNB Inc. Case and the PNB LP Case.  The complaint in the PNB Inc. Case commenced the instant adversary proceeding, and the complaint in the PNB LP Case commenced Adversary Proceeding06-2228-B. Although both complaints lump PNB Inc. and PNB LP together under the term "Debtors," the above-captioned complaint seeks in part avoidance of alleged fraudulent transfers made by PNB Inc. to the Briggs.  Ron V. Briggs filed an answer on August 14, 2007. Alexander Briggs, Brian Briggs, and Ronald J. Briggs ("RJ Briggs") filed an answer on December 1, 2006.

The Briggs have also filed a motion for summary judgment in Adversary Proceeding 06-2228-B (the "Briggs' PNB LP SJ Motion") that is identical to the Briggs' PNB Inc. SJ Motion.  The court has rendered a decision on the Briggs' PNB LP SJ Motion concurrently with its decision here on the Briggs' PNB Inc. SJ Motion.

## I.  FACTS

The dispute between Plaintiff and the Briggs arises out of a business relationship among Plaintiff, PNB LP, and PNB Inc.  PNB LP was formed for the purpose of managing a local television station.  PNB Inc. was formed to act as managing and general partner of PNB LP.  In the mid-to-late 1990s PNB LP entered into negotiations to sell the television station to Paxson

-3-

1  Communications ("Paxson").  PNB LP also entered into three

2  agreements with Plaintiff, an Affiliation Agreement (dated May

3  26, 1995), a Time Brokerage Agreement (dated September 6, 1996),

4  and an Option Agreement (dated September 6, 1996).

5       Following the execution of the three agreements, Plaintiff

6  and PNB LP disagreed over whether Plaintiff was entitled to

7  commissions based on the agreements.  Plaintiff sued PNB LP and

8  PNB Inc.  In May 1998 El Dorado County Superior Court entered

9  judgment in favor of Plaintiff, awarding him $38,333.00 under the

10 Affiliation Agreement and $53,550.00 under the Time Brokerage

11 Agreement.  The superior court also granted declaratory relief

12 stating that Plaintiff would be entitled to a three percent

13 commission under the terms of the Option Agreement in the event

14 that the television station was sold "under" the terms of the

15 September 6, 1996 Option Agreement.  The California Court of

16 Appeal affirmed the trial court decision on April 17, 2000, and

17 on May 16, 2000 PNB LP and PNB Inc. satisfied the money

18 judgments.

19      The declaratory relief awarded by the superior court,

20 however, continued to be a point of contention between Plaintiff

21 and the PNB LP and PNB Inc.  Concurrently with the litigation

22 between Plaintiff and PNB LP and PNB Inc., PNB LP had also been

23 involved in litigation with Paxson over the sale of the

24 television station.  Paxson and PNB LP settled their dispute in

25 March, 2000.  The sale of the television station to Paxson closed

26 in June, 2000.  PNB LP then took the position that the sale of

27

28                              -4-

the television station did not occur "under" the September 6, 1996 Option Agreement and that Plaintiff was not entitled to a commission.  Plaintiff disagreed and sought to enforce the declaratory judgment.  On June 21, 2000, Plaintiff applied for and obtained an order for examination from the El Dorado County Superior Court.  The order for examination was issued on June 22, 2000.

PNB LP then applied for a temporary restraining order to halt Plaintiff's attempt to collect the commission.  On August 28, 2005 the El Dorado County Superior Court vacated its prior order for examination and enjoined Plaintiff from taking further action to collect the commission.  The superior court also directed the parties to proceed by evidentiary hearing under California Civil Procedure Code Section 724.050 to resolve the issue of whether Plaintiff's judgment had been satisfied.  The date for the evidentiary hearing was set for March 13, 2001.

Prior to obtaining the restraining order PNB LP had started a process by which it intended to buy out the limited partnership interests held by Daniel Briggs, Jordan Briggs, Jessica Briggs, John Bailey, Kathleen Bailey, Kristine C. Bailey, Steven C. Bailey, and Kate Bailey (the "Former Partners").  The Former Partners are also named as defendants in this adversary proceeding.  PNB LP hired an accountant to value the capital balance of the partnership and assess the value of a one percent interest.  The preliminary capital balance was valued at $13,709,703.38.  Each one percent interest was initially valued

at $137,097.03.  PNB LP then reduced the value of each one percent interest to $130,097.03, so as to set aside $700,000.00 in the event that Plaintiff were to be awarded a commission following the March 2001 evidentiary hearing.  The Former Partners agreed to accept the reduced valuation of their interests.  The Former Partners held 30.6 of the limited partnership interests at the time of the buyout transaction.  PNB LP transferred funds from its accounts to the Former Partners. In exchange for the transfer of funds to each of the Former Partners, PNB LP received a transfer of the recipient Former Parnters' limited partnership interest, and each recipient Former Partner executed a and delivered to PNB LP a mutual and general release and waiver.  The funds transferred to the Former Partners totaled $3,980,969.12.  The buyout transactions were concluded as of August 31, 2000.

At least some of the Briggs also received transfers from PNB LP and/or PNB Inc. at the time that the Former Partners were bought out and afterward.  However, the parties differ on the specific transfers.  The Briggs admit that the following transfers occurred:

| Transfer | Date | Amount |
|---|---|---|
| Ron V. Briggs | 8/7/00 | $115,000.00 |
| Ron V. Briggs | 8/17/00 | $75,000.00 |
| Ron V. Briggs | 8/28/00 | $100,000.00 |
| Ron Briggs Roth IRA | 8/29/00 | $50,000.00 |
| Ron V. Briggs | 12/8/00 | $75,000.00 |

-6-

| Ron V. Briggs | 12/27/00 | $25,000.00 |
| Ron V. Briggs | 1/31/02 | $4,029.69 |
| Ron V. Briggs | 1/31/02 | $4,029.69 |
| Brian Briggs | 8/28/00 | $8,000.00 |
| Brian Briggs | 9/13/00 | $10,000.00 |
| Brian Briggs | 10/14/00 | $16,000.00 |
| R.J. Briggs | 8/28/00 | $42,500.00 |
| R.J. Briggs | 10/25/00 | $5,500.00 |

The Briggs admit to the transfers listed above based on Plaintiff's responses to interrogatories in which Plaintiff identified transfers he believed to be avoidable.  In his interrogatory responses Plaintiff also identified transfers made to a "Z & B Ranch" and to American Express as avoidable.  Neither Z & B Ranch nor American Express are named as defendants in this adversary proceeding or the adversary proceeding commenced in the PNB LP Case.  Plaintiff also did not identify any avoidable transfers made to Alexander Briggs, and the Briggs admit no transfers received by Alexander.  The Briggs concede that Brian Briggs received a total of $34,000.00 in transfers between August 28, 2000 and October 14, 2000.  The Briggs also concede that RJ Briggs received a total of $48,000.00 in transfers between August 28, 2000 and October 25, 2000.  The Briggs also concede that Ron V. Briggs personally received a total of $398,056.38 in transfers between August 7, 2000 and January 31 2002, with the bulk of those transfers received no later than December 27, 2000. Finally, the Briggs concede that Ron V. Briggs' Roth IRA received

-7-

$50,000.00 on August 29, 2000.  The Briggs do not identify whether PNB LP or PNB Inc. made the transfers that they have conceded some of them received.

Plaintiff alleges in his opposition that at the time that the Former Partners were bought out, the Briggs took distributions amounting to all of the remaining assets of PNB LP and PNB Inc.[1]  He further alleges that Ron V. Briggs received $3,300,000.00 in transfers between May 2000 and January 2003, and of this amount, after September 2001 Ron V. Briggs received distributions totaling $209,000.00 from the accounts of PNB LP and PNB Inc.  Plaintiff alleges that other distributions of at least $170,000.00 occurred after September 2001, but Plaintiff does not allege who received those distributions.  Plaintiff further alleges that overall, over $7,500,000.00 in transfers were made to both the Former Partners and the Briggs after June, 2000.

Following the sale of the television station to Paxson and the August 2000 buyout transaction, PNB Inc. held funds totaling $446,871.43 in accounts under its name.  PNB LP held funds totaling $3,994.567.44 in accounts under its name.  Thereafter, PNB Inc. and PNB LP used the remaining funds that were not disbursed from the PNB LP and PNB Inc. accounts to either the

---

[1]This allegation is based on Plaintiff's argument that PNB LP and PNB Inc. were dissolved or ceased to exist after the Former Partners were bought out in August 2000.  The court addresses the merits of this argument elsewhere in this decision.

-8-

1   Former Partnerrs, the Briggs, or others to make stock purchases

2   and to purchase investments on the stock market.

3       The specific account balances for PNB LP and PNB Inc.'s

4   investment portfolio accounts for the period from June 2000 to

5   January 2002, covering the period during which specifically

6   identified transfers were received, are listed in the table

7   below.  The Briggs assert that the portfolio account balances

8   represent the bulk of assets owned by PNB LP and PNB Inc. during

9   this period.

| End of Date | PNB LP First Union Account Balance | PNB LP Union Bank Account Balance | PNB Inc. Firsrt Union Account Balance |
|---|---|---|---|
| 06/2000 | $7,728,717.42 | $187,000.01 | $232,533.96 |
| 07/2000 | $7,666,234.74 | $160,998.25 | $337,183.93 |
| 08/2000 | $3,994,567.44 | $2,217,735.87 | $446,871.43 |
| 09/2000 | $3,675,869.87 | $109,880.47 | $373,746.43 |
| 10/2000 | $3,507,558.06 | $32,000.01 | $478,995.81 |
| 11/2000 | $2,608,401.93 | $35,305.23 | $392,446.19 |
| 12/2000 | $1,675,252.80 | $4,000.01 | $461,369.09 |
| 01/2001 | $2,450,170.05 | $22,000.01 | $511,530.98 |
| 02/2001 | $1,282,932.05 | $0.01 | $450,446.30 |
| 03/2001 | $20,031.05 | $0.01 | $1,314,824.22 |
| 04/2001 | $51.19 | $0.01 | $1,720,178.52 |
| 05/2001 | $51.19 | | $1,514,439.73 |
| 06/2001 | $51.39 | | $1,832,034.71 |
| 07/2001 | | | $1,352,360.14 |
| 08/2001 | | | $902,914.95 |
| 09/2001 | | | $481,124.82 |
| 10/2001 | | | $257,212.78 |

| 11/2001 | | | $193,814.97 |
|---------|---|---|-------------|
| 12/2001 | | | $89,787.46 |
| 01/2002 | | | $89,200.50 |

The portfolio account balances listed above are based on the Briggs' summary of the account balances and account statements submitted by the Briggs. Plaintiff has not submitted any evidence of the specific balances of any account held by PNB LP or PNB Inc. during the period over which the disputed transfers occurred. Plaintiff has also not submitted any evidence of other assets held by PNB LP or PNB Inc. during that period.

In August 2001, Plaintiff filed another action in El Dorado County Superior Court, seeking additional payment under the Time Brokerage Agreement based on the passage of time from the May 1998 judgment. The superior court entered judgment for Plaintiff in the amount of $77,350.00 in July 2003.

Also in July 2003 the El Dorado County Superior Court concluded proceedings under California Civil Procedure Code Section 724.050, finding that the sale of the television station from PNB LP to Paxson occurred "under" the Option Agreement. The superior court awarded Plaintiff $531,750.00 plus interest. However, by the time Plaintiff obtained this money judgment, neither PNB LP nor PNB Inc. had sufficient assets to satisfy the judgment. Both PNB LP and PNB Inc. commenced voluntary bankruptcy cases in June 2004 following Plaintiff's further attempts to enforce the money judgment.

-10-

## II.  ANALYSIS

Plaintiff has filed the instant adversary proceeding as assignee of the trustee in the PNB Inc. Case.  Thus, this adversary proceeding seeks to set aside transfers made by PNB Inc. to various parties, including the Briggs.  As to the Briggs, Plaintiff seeks to avoid all transfers that PNB Inc. made to the Briggs following the June 2000 sale of the television station to Paxson.  Plaintiff asserts that these transactions were conducted for the sole purpose of fraudulently attempting to remove assets of PNB Inc. from his reach before he could successfully obtain and enforce a money judgment.  The Briggs disagree.  They argue that the transfers were not fraudulent under California fraudulent transfer law, that they were entitled to receive transfers from PNB Inc., that no transfers were made to the Briggs while PNB Inc. was insolvent, and that by the time Plaintiff obtained a money judgment sufficient assets were not available to satisfy the debt to plaintiff due to unforeseen economic forces rather than any alleged fraudulent transfer.  The Briggs have requested that the court enter summary judgment in their favor, arguing that there is no genuine dispute of material fact as the fraudulent nature of the disputed transactions and that they are entitled to judgment as a matter of law.

### A.  **Applicable Law**

#### 1.  **Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(c), made applicable to this proceeding by Federal Rule of Bankruptcy

Procedure 7056, the moving party on a motion for summary judgment must demonstrate that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law.  Fed R. Civ. P. 56(c).

The initial burden of showing the absence of a material factual issue is on the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for the motion"); De Horney v. Bank of America Nat'l Trust & Sav. Assoc., 879. F.2d 459, 464 (9th Cir. 1989).  If the moving party would not ultimately bear the burden of persuasion at trial, the movant may satisfy this burden by showing that the record lacks substantial evidence supporting the nonmovant's claim.  Celotex, 477 U.S. at 324-26.  The movant is not required to show that it is entitled to relief on each and every element of the claim for relief.  Instead, if the movant can show that the plaintiff cannot meet the plaintiff's burden of proving a single necessary element of the first claim for relief, then the movant can prevail.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-60 (1970).

However, if the movant would ultimately have the burden of persuasion on an issue, such as successfully raising an affirmative defense to the action, the movant must shoulder the burden usually allocated to the plaintiff by showing evidence that no reasonable jury could disregard.  See Edison v. Reliable Life Ins. Co., 664 F.2d 1130, 1131 (9th Cir. 1981); Herndon v.

-12-

Massachusetts Gen. Life Ins. Co., 28 F. Supp. 379, 382 (W.D. Va. 1998).

Once the movant has met its burden of production, the burden shifts to the nonmovant to show that there is in fact a genuine issue for trial.  The nonmoving party must identify specific facts, supported by evidence, affidavits, depositions, interrogatories, sworn or certified copies of documents, or other material contemplated by Federal Rule of Civil Procedure 56(e), which articulate and illustrate the presence of a genuine issue requiring a trial.  Fed R. Civ. P. 56(e); Celotex, 477 U.S. at 324.  The evidence presented by the nonmovant must be substantial and the court must consider the nonmovant's substantive burden of persuasion at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Mere assertions do not constitute facts sufficient to require a trial.  Restating a pleading, submitting new pleadings, or simply making assertion by legal memorandum or even by affidavit do not set forth specific facts requiring a need for trial.  The nonmovant must demonstrate that there will be testimonial, documentary, or other evidence to support the claim.  See Celotex, 477 U.S. at 324 (1986); Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994).  And "[b]ecause 'credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge', '[t]he evidence of the non-movant is to be believed, and all justifiable

1   inferences are to be drawn in his favor.'" <u>Giles v. GMAC</u>, 494

2   F.3d 965, 872 (9th Cir. 2007)(quoting <u>Anderson</u>, 391 U.S. at 255).

3      In addition to showing that there are no genuine issues of

4   material fact that require trial, the movant must also show that

5   it is legally entitled to judgment in its favor. And to defeat

6   summary judgment, the nonmovant must articulate a viable legal

7   theory that entitles it to relief should it prevail on the facts

8   at trial. "The showing of a 'genuine issue for trial' is

9   predicated upon the existence of a legal theory which remains

10   vaible under the asserted version of the facts, and which would

11   entitle the party opposing the motion (assuming his version to be

12   true, to a judgment as a matter of law." <u>Mc Guire v. Columbia</u>

13   <u>Broadcasting System, Inc.</u>, 399 F.2d 902, 902 (9th Cir. 1968).

14

15                  **2.  Fraudulent Transfer**

16     Both the Briggs and Plaintiff agree that Plaintiff is barred

17   from bringing an action to avoid the transfers in dispute here

18   under 11 U.S.C. Section 548(a), as that section is limited to

19   avoidance of transfers made within one year of the date of the

20   filing of the petition in the parent bankruptcy case. The

21   disputed transfers that the parties have identified with any

22   specificity occurred in between 2000 and 2002; the parent

23   bankruptcy case was commenced on June 17, 2004. Instead, all

24   parties agree that Plaintiff may proceed pursuant to California

25   state law governing fraudulent transfers, as permitted by 11

26   U.S.C. Section 544(b)(1), which allows the trustee to avoid any

27

28                      -14-

transfer of an interest of the debtor in property that is
voidable under applicable law by a creditor holding an allowed
unsecured claim.

Whether the transfer of an interest or an asset of the
debtor to one or more of the Briggs constitutes a fraudulent
transfer in this proceeding is governed by California's version
of the Uniform Fraudulent Transfer Act (the "UFTA"), codified in
California Civil Code Section 3439, et seq.  The UFTA covers
transfers that are fraudulent because they were made with actual
intent to hinder, delay, or defraud creditors, and transfers that
are constructively fraudulent.  An essential element of the any
cause of action brought under the California UFTA that seeks the
avoidance of or other remedies related to an allegedly fraudulent
transfer is the existence of an actual transfer made by the
debtor to a third party.[2]

A transfer may be constructively fraudulent with respect to
a creditor whose claim arose before or after the transfer if the
transfer is made without receiving a reasonably equivalent value
in exchange for the transfer, and the debtor either was engaged
or was about to engage in a business or a transaction for which
the remaining assets of the debtor were unreasonably small in
relation to the business or transaction, or the debtor intended
to incur, or believed or reasonably should have believed that he

---

[2]The court notes that the California UFTA also provides for
a cause of action for remedies related to obligations
fraudulently incurred by the debtor.  Here, however, Plaintiff
only seeks to avoid fraudulent transfers.

-15-

or she would incur, debts beyond his or her ability to pay as they became due.  See Cal Civ. Code. § 3439.04(a)(2).  A transfer may be constructively fraudulent with respect to a creditor whose claim arose before the transfer was made if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or became insolvent as a result of the transfer.  See Cal. Civ. Code § 3439.05.

Pursuant to California Civil Code Section 3439.04(a)(1), a transfer is fraudulent as to a creditor whose claim arose either before or after the transfer was made if the transfer was made with "actual intent to hinder, delay, or defraud any creditor of the debtor."  Cal Civ. Code § 3439.04(a)(1).  "Actual intent" is informed by a non-exclusive list of eleven factors listed under Section 3439.04(b).  The eleven factors include:

> (1) Whether the transfer or obligation was to an insider.
>
> (2) Whether the debtor retained possession or control of the property after the transfer.
>
> (3) Whether the transfer or obligation was disclosed or concealed.
>
> (4) Whether before the transfer was made or obligation was incurred, the debtor was sued or threatened with suit.
>
> (5) Whether the transfer was of substantially all the debtor's assets.
>
> (6) Whether the debtor absconded.
>
> (7) Whether the debtor removed or concealed assets.
>
> (8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

-16-

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

Cal Civ. Code § 3439(b)(1)-(11). The eleven factors were added to the statute in 2004. Pursuant to Section 3439.04(c), the addition of the factors to Section 3439 does not constitute a change in applicable law, but is instead declaratory of it and is not intended to affect prior judicial decisions interpreting the statute. The eleven factors do not "create a mathematical formulà to establish actual intent. There is no minimum number of factors that must be present before the scale tips in favor of finding actual intent to defraud. [The] list of factors is meant to provide guidance to the trial court, not compel a finding one way or the other." Filip v. Bucurenciu, 129 Cal. App. 4th 825, 834 (2005).

The statute also provides a defense to a fraudulent transfer action. Pursuant Section 3439.08(a), a transfer is not voidable against a person who took in good faith and for reasonably equivalent value or against any subsequent transferee or obligee taking from such a person. Cal. Civ. Code § 3439.08(a).

-17-

**B.   Alexander Briggs Is Entitled To Summary Judgment**
**on All of Plaintiff's Claims for Relief**
**Under California Civil Code Section 3439 and Plaintiff's Claim**
**for Turnover**

Based on the evidence in the record and the applicable law discussed above, the court concludes that defendant Alexander Briggs is entitled to summary judgment on all of Plaintiff's claims for relief under California Civil Code Section 3439.  As noted above, a requisite element of a claim for relief under Section 3439 is the existence of an actual transfer from the debtor to the transferee.  Alexander Briggs does not admit to receiving any transfers from PNB Inc. in the Briggs' PNB Inc. SJ Motion.  Plaintiff has not come forward with any evidence that Alexander Briggs received any transfers from PNB Inc.  Plaintiff cannot sustain any claim against Alexander Briggs seeking avoidance of a fraudulent transfer if there is no evidence in the record that a transfer to Alexander Briggs was made.

Plaintiff does argue that Alexander Briggs, who remained a limited partner in PNB LP after the Former Partners were bought out, along with Ron Briggs, RJ Briggs, and Brian Briggs, took all of the assets of both PNB LP and PNB Inc., disbanded PNB LP and PNB Inc., and treated the funds they allegedly took as the funds of a new entity, which Plaintiff describes as "some form of general partnership, with Ron Briggs installed in as the general partner, with full authority to disburse assets as he chose." (Dkt. 101 at 19).  Plaintiff argues that the "new" entity was a personal investment company that engaged in high-risk

-18-

investments.  (Dkt. 101 at 8).  Plaintiff also argues that PNB LP ceased to exist because PNB Inc., as the general partner of the limited partnership, ceased to exist when it "repurchased all of its own stock, essentially devouring itself and creating a non-entity."  (Dkt. 101 at 7).

This argument, however, is not supported by the evidence presented by Plaintiff or by the legal authorities applicable to dissolution of corporate and partnership entities.  Plaintiff makes a number of assertions and allegations regarding the dissolution or disbanding of PNB LP and PNB Inc., but his only evidence that PNB Inc. and PNB LP ceased to exist as "viable entities" following the transfers consists of excerpts deposition testimony of Ron V. Briggs.  (Dkt. 101 at 23-50).  Plaintiff points to Ron Briggs' statement that all shares of stock in PNB Inc. were signed over to PNB Inc. at the time of the transfer to the Former Partners and remained in the treasury (Dkt. 101 at 30) as evidence that PNB Inc. ceased to exist.  Plaintiff also points to Ron Briggs' statements that records for the partnership or corporation were not maintained or were lost due to obsolescence of the computer software used to maintain them (Dkt. 101 at 23, 76) as evidence that neither the corporation nor the partnership continued to exist after the transfers.  Plaintiff asserts that it is "fundamental law" that in order to exist the entities must have maintained records, had shareholders, and conducted directors' or shareholders' meetings.  Plaintiff also argues that because the limited partnership agreement states that the purpose

-19-

of the limited partnership was to "acquire, own, operate, develop, manage or otherwise engage in the business relating to the operating of a television station," (Dkt. 86 at 2), PNB LP ceased to exist after the television station was sold to Paxson and the partnership agreement was not amended to reflect a new purpose.

The argument fails.  Despite the allegedly fundamental nature of the law underpinning Plaintiff's theories of corporate and partnership dissolution, Plaintiff has cited no legal authority that supports his assertion that a corporation is automatically dissolved when its directors or officers lose or fail to maintain corporate records, or when it redeems all shares of its stock and retains the shares without offering them for sale.  The court is unaware of any such authority.  Plaintiff's argument is probably derived from the concept of "piercing the corporate veil."  However, "piercing the corporate veil" does not destroy the entity; it only creates liability to the extent necessary to prevent a fraud.  "When it is claimed that a parent corporation should be liable because it is the alter ego of its subsidiary, equity commands that the corporate wall be breached. Yet the wall remains; the parent is liable through the acts of the subsidiary, but as a separate entity."  Mesler v. Bragg Management Co., 39 Cal.3d 290, 301, 702 P.2d 601, 607 (1985).

Thus, Plaintiff's argument that a theory of alter ego liability should be applied to a theory of dissolution fails. Plaintiff has also not shown that either PNB LP or PNB Inc. were

-20-

dissolved under accepted theories of dissolution.  Under California law, dissolution of a corporation can be either involuntary and accomplished by court proceeding, <u>see</u> Cal. Corp. Code § 1800 et. seq., or voluntarily accomplished by the election of the board of directors or shareholders, <u>see</u> Cal. Corp. Code § 1900 et. seq.  Plaintiff has submitted no court decree or order winding up and dissolving PNB Inc. that evinces an involuntary dissolution of the corporation.  <u>See</u> Cal. Corp. Code § 1804.  Nor has Plaintiff submitted any certificate of dissolution that evinces a voluntary dissolution of the corporation.  <u>See</u> Cal. Corp. Code § 1905.

Similarly, under California law a limited partnership is dissolved and its affairs are wound upon the first to occur of the four following events:

1.) At the time specified, or on the occurrence of events provided in the partnership agreement.  Cal. Corp. Code § 15681(a).

2.) Upon the written consent of all general partners and a majority in interest of the limited partners, unless otherwise provided in the partnership agreement. Cal. Corp. Code § 15681(b).

3.) Unless otherwise provided in the partnership agreement, when a general partner ceases to be a general partner pursuant to the provisions of Cal. Corp. Code § 15642, unless (1) there is one or more

-21-

remaining general partners that agree to continue the
business, or (2) a majority in interest of the limited
partners agree in writing to continue the partnership
and, within six months after the last remaining general
partner ceases to be a partner, admit one or more new
general partners.  Cal. Corp. Code § 15681(c).  If the
general partner is a corporation, the corporation
ceases to be a general partner pursuant to Corporations
Code Section 15642 upon the filing of a certificate of
dissolution or its equivalent.  Cal. Corp. Code §
15642(h).

4.) Entry of a judicial decree of dissolution.  Cal.
Corp. Code. § 15681(d).

Plaintiff has provided no evidence that any of the events
listed above has occurred that caused either PNB Inc. or PNB LP
to "cease to exist" immediately after the transfers to the Former
Partners.  Rather, Plaintiff confuses theories of alter ego
liability and partner liability with theories of dissolution.
Whether or not a director or officer is liable for the actions of
a corporation, and whether or not a partner is liable for the
actions of a partnership such that the entities intended to limit
liability should be disregarded does not necessarily lead to a
conclusion that the corporation or partnership does not exist.
Nor does it lead to a conclusion that informs the issue at hand
here, which is whether PNB Inc. actually made any transfers to
Alexander Briggs.  Whether Ron Briggs or any other person

-22-

subsequently treated funds held in the accounts of PNB LP or PNB
Inc. as the funds of a separate business venture or even his own
personal funds does not compel the conclusion that Alexander
Briggs received a transfer from PNB Inc.

As a result, the court concludes that, given the lack of any
evidence in the record that Alexander Briggs received a transfer
from PNB Inc., Alexander Briggs is entitled to summary judgment
that Plaintiff take nothing by his claims for relief under
California Civil Code Section 3439.

Furthermore, because the court has concluded that Alexander
Briggs is entitled to summary judgment on Plaintiff's claims
under California Civil Code Section 3439, Alexander Briggs is
also entitled to summary judgment that Plaintiff take nothing
from Alexander Briggs by Plaintiff's claim for turnover.

**B. Ron V. Briggs, RJ Briggs, and Brian Briggs Have Not Sustained
Their Initial Burden of Showing That There is No Genuine Issue of
Material Fact that the Transfers Were Not Fraudulent Or That They
are Entitled To Judgment As a Matter of Law**

In applying the evidence presented by both parties to the
causes of action set forth in the California UFTA, the court
concludes that Ron Briggs, RJ Briggs, and Brian Briggs are not
entitled to summary judgment on any claim for relief that
Plaintiff asserts under the California UFTA.  However, the
reasons that the court concludes that Ron Briggs, RJ Briggs, and
Brian Briggs are not entitled to summary judgment are not
necessarily the same reasons set forth by Plaintiff in his

-23-

opposition.  Rather, the court finds that Ron Briggs, RJ Briggs, and Brian Briggs have failed to carry their initial burden of demonstrating that there is no genuine issue of material fact as to whether the transfers they admit they received are avoidable for the purposes of the California UFTA and that they are therrefore entitled to judgment as a matter of law.

Ron Briggs, RJ Briggs, and Brian Briggs' failure to meet their initial burden is primarily due to the fact that they fail to show evidence establishing the source of the transfers they admit they received.  Although Ron Briggs, RJ Briggs, Brian Briggs and Plaintiff lump PNB LP and PNB Inc. togather as a single entity, referring to them collectively in various pleadings as "Debtors," "PNB," "Ponce Nicasio," or simply "Ponce," that conceptualization, while perhaps convenient, is legally insufficient for determining whether the alleged transfers are avoidable.  PNB LP and PNB Inc. are separate entities in separate bankruptcy cases.  No substantive consolidation of the cases has occurred.

Ron Briggs, RJ Briggs, and Brian Briggs admit in the Briggs' PNB Inc. SJ Motion that they received some transfers.  They have admitted receiving transfers totaling $508,383.65 to Ron between August 7, 2000 and January 31, 2002.  They have admitted receiving transfers totaling $34,000.00 to Brian between August 28, 2000 and October 14, 2000.  And they have admitted receiving transfers totaling $48,000.00 to RJ Briggs between August 28, 2000 and October 25, 2000.  However, nowhere in the motion or in

-24-

the supporting declaration of Ron V. Briggs do Ron Briggs, RJ Briggs, and Brian Briggs specify whether those transfers came from PNB LP or PNB Inc.  The motion and the declaration simply state that the transfers came from "PNB."  This prevents the court from making essential determinations with respect to whether a genuine issues of material fact exists, or whether Ron V. Briggs, RJ Briggs, and Brian Briggs are entitled to judgment as a matter of law.  It also prevents the court from determining whether summary judgment is appropriate in each of the adversary proceedings commenced in the PNB LP and PNB Inc. cases.

The court will next discuss how Ron V. Briggs, RJ Briggs, and Brian Briggs' failure to present evidence as to the specific transferring entity for each transfer received prevents them from meeting their initial burden of showing that the are genuine issues of material fact as to each cause of action and that they are entitled to judgment as a matter of law.

### 1.   Section 3439.05

With respect to Plaintiff's cause of action under Section 3439.05, Ron V. Briggs, RJ Briggs, and Brian Briggs' failure to identify whether PNB LP or PNB Inc. made the transfers that they admit they received prevents the court from making a determination as to both elements of the cause of action. Without knowing the identity of the transferring entity, the court cannot determine that there is no genuine issue of material fact as to whether the transferring entity received reasonably equivalent value in exchange for the transfer.  Without knowing

-25-

the identity of the transferring entity, the court also cannot
determine that there is no genuine issue of material fact as to
whether the entity was insolvent at the time the transfer was
made or whether the entity became insolvent as a result of the
transfer; if the identity of the transferring entity is unknown,
its financial condition before and after the transfer is also
unknown.

For example, Ron V. Briggs, RJ Briggs, and Brian Briggs
received the bulk of the transfers that they admit to personally
receiving between August 2000 and the end of December 2000.  At
the end of July, 2000 PNB LP held $7,827,232.99 in its portfolio
investment accounts; by the end of December, 2000 its account
balances had diminished to $1,679,252.81.  PNB Inc. held
$337,183.93 in its portfolio investment account at the end of
July 2000; by the end of December, 2000 the account balance was
$461,369.09.  Both PNB LP and PNB Inc. owed a contingent
liability to Plaintiff.  If Ron V. Briggs, RJ Briggs, and Brian
Briggs received their transfers from PNB LP during this period,
then based on the evidence in the record PNB LP was not insolvent
at the time that any of the transfers were made and it did not
become insolvent as a result of any of the transfers, even
considering the full amount of the $531,750.00 that Plaintiff was
eventually awarded.

However, the court is unable to make the same determination
with respect to PNB Inc., as there is insufficient evidence in
the record to show that PNB Inc. was not insolvent between August

-26-

2000 and December 2000, the period in which the bulk of the
transfers were received by Ron V. Briggs, RJ Briggs, and Brian
Briggs.  The court lacks sufficient evidence regarding the value
of PNB Inc.'s assets during that period.  Ron V. Briggs, RJ
Briggs, and Brian Briggs have presented evidence of the funds
held by PNB Inc. in its portfolio accounts, but have not
presented evidence of the value of PNB Inc.'s share in PNB LP,
which the court must consider in determining the value of PNB
Inc.'s assets.  Ron V. Briggs, RJ Briggs, and Brian Briggs have
presented evidence in the form of PNB LP's amended limited
partnership agreement that shows that PNB Inc. held a 52% share
of PNB LP as general partner in 1983.  (Dkt. 86 at 7).  Ron V.
Briggs, RJ Briggs and Brian Briggs have not presented evidence
regarding PNB Inc.'s share of PNB LP at the time that they
received the transfers they admit to receiving.  The court does
not find the 1983 amended limited partnership agreement to
constitute evidence sufficient to allow Ron V. Briggs, RJ Briggs,
and Brian Briggs to carry their initial burden, as the amended
limited partnership agreement does not appear to reflect changes
in the ownership structure of PNB LP that occurred after 1983,
and there are inconsistencies between the ownership structure
described in the amended limited partnership agreement and the
ownership structure described in the motion and the declaration
of Ron V. Briggs.  First, the court notes that the amended
limited partnership agreement defines the general partner, "Class
'A' Limited Partner" (who is not identified by name in the

-27-

agreement), and "Class 'B' Limited Partners," who are identified as Carmen Briggs, Yolanda Nava, and Mary Ann Alonzo. (Dkt. 86 at 7). According to the agreement, the Class A limited partner held an 18% share, Carmen Briggs held a 15.6% share, Yolanda Nava held a 7.2% share, and Mary Ann Alonzo held a 7.2% share of the limited partnership. The amended limited partnership agreement does not list any of the defendants in this adversary proceeding, including the Former Partners or Ron V. Briggs, RJ Briggs, Brian Briggs, or Alexander Briggs. This raises a genuine issue of material fact as to PNB Inc.'s share in PNB LP at the time that the disputed transfers were made.

Second, the existence of a genuine issue of material fact is further reinforced by inconsistencies in the evidence presented regarding the ownership structure of PNB LP. The declaration of Ron V. Briggs (Dkt. 82) states that at the time that the Former Partners were bought out, the Former Partners collectively held a 30.6% share in PNB LP, Ron V. Briggs held a sixty-eight percent (68%) share, Brian Briggs held a one percent (1%) share personally, Brian Briggs' IRA held a one percent (1%) share, RJ Briggs held a one percent (1%) share personally, and RJ Briggs' IRA held a one percent (1%) share. These interests total 102.6%, without considering any share for limited partner Alexander Briggs or general partner PNB Inc., the amounts of which are not disclosed in Ron V. Briggs' declaration. The share percentages listed above are also not consistent with the share percentages

-28-

listed in the amended limited partnership agreement as described above.

Due to the inconsistencies in the evidence presented, there is a genuine issue of material fact as to whether PNB Inc. held any interest in PNB LP at the time the disputed transfers were made and, if it did hold an interest, the value of that interest. There is therefore also a genuine issue of material fact as to the value of all of PNB Inc.'s assets at the time that the disputed transfers were made. Considering that the funds held by PNB Inc. in its portfolio account between August 2000 and December 2000 were not greater than the amount of the commission that Plaintiff was eventually awarded, it is possible that PNB Inc. was insolvent during the entire period, as the PNB Inc.'s assets may not have exceeded its debts. Accordingly, there is a genuine issue of material fact as to whether PNB Inc. was legally insolvent for the purposes of the California UFTA at the time that the disputed transfers were made.

The court recognizes that Ron V. Briggs, RJ Briggs, and Brian Briggs have argued that the value of the debt owed to Plaintiff should be discounted by fifty percent (50%) from the full amount of the $531,750.00 that Plaintiff was eventually awarded in July 2003, because at the time the disputed transfers were made to Ron V. Briggs, RJ Briggs, and Brian Briggs, PNB LP and PNB Inc.'s liability to Plaintiff for the commission was still only contingent in nature. If the liability were discounted by 50%, then PNB Inc. would have retained funds in its

-29-

portfolio account from August 2000 through September 2001

sufficient to prevent it from becoming insolvent due to the debt

owed to Plaintiff, even without considering the value of any

share that PNB Inc. held in PNB LP.

However, Ron V. Briggs, RJ Briggs, and Brian Briggs have not

presented sufficient evidence that such a discount is warranted.

Ron V. Briggs, RJ Briggs, and Brian Briggs argue for the fifty-

percent reduction on the basis of the El Dorado County Superior

Court's determination in August 2000 vacating the order of

examination obtained by Plaintiff and staying further attempts by

Plaintiff to collect a commission pending the outcome of an

evidentiary hearing.  They argue that in order to impose such a

stay, the superior court had to find that PNB LP and PNB Inc. had

demonstrated a probability of success on the merits of its claim

that Plaintiff was not entitled to any commission.  Ron V.

Briggs, RJ Briggs, and Brian Briggs assert that this finding

should be interpreted as a finding that PNB LP and PNB Inc.'s

chances of success were "more likely than not" and that this

should be equated with a "preponderance of the evidence" standard

that justifies a fifty percent reduction in the amount of the

potential debt to Plaintiff for the purposes of the insolvency

analysis.

This argument is not persuasive.  First, Ron V. Briggs, RJ

Briggs, and Brian Briggs have presented no California state

authority regarding the method by which contingent liabilities

should be valued for the purposes of an insolvency analysis.

-30-

1  Their citations to federal case law, including In re Xonics
2  Photochemical, 841 F.2d 198, 200 (7th Cir. 1988)), while
3  interesting, are not controlling, as Plaintiff is proceeding
4  under a cause of action created by state law, not federal law.
5  Second, Ron V. Briggs, RJ Briggs, and Brian Briggs's argument
6  that the granting of a preliminary injunction conclusively
7  established that PNB LP and PNB Inc. were "more likely than not"
8  to prevail on their assertion that Plaintiff was not entitled to
9  a commission is not supported by the evidence presented.   The
10  order of the El Dorado Superior Court granting the preliminary
11  injunction references no finding that PNB LP and PNB Inc. were
12  more likely that not to prevail on the merits of their position,
13  and Ron V. Briggs, RJ Briggs, and Brian Briggs have not submitted
14  evidence of the superior court's findings of fact and conclusions
15  of law.   Furthermore, a party's ability to obtain a preliminary
16  injunction cannot be equated with a probability that the party
17  will prevail on its claim.   Huntingdon Life Sciences, Inc. v.
18  Stop Huntingdon Animal Cruelty USA, Inc., 129 Cal. App. 4th 1228,
19  1247-48 (2005); Lam v. Ngo, 91 Cal. App. 4th 832, 843 (2001).   The
20  likelihood that a party will prevail on the merits of its claim
21  is not the only factor assessed by trial court in determining
22  whether to issue a preliminary injunction.   A trial court also
23  assesses the harm that the party seeking the injunction will
24  likely sustain if an injunction is not granted.   Both of these
25  considerations are taken into account, as well as the respective
26  equities of the case.   Huntingdon Life Sciences, 129 Cal. App. 4th
27
28                              -31-

at 1248.  Therefore, Ron V. Briggs, RJ Briggs, and Brian Briggs's
reliance on the fact that PNB LP and PNB Inc. obtained a
preliminary injunction does not by itself serve as a sound basis
for discounting any contingent liability to Plaintiff by fifty
percent.

Furthermore, Ron V. Briggs, RJ Briggs, and Brian Briggs's
assertion that the contingent liability to Plaintiff should be
reduced by fifty percent is inconsistent with the manner in which
PNB LP and PNB Inc. treated the contingent liability at the time
that the Former Partners were bought out.  At the time that the
Former Partners were bought out in August 2007, PNB LP directed
that the preliminary capital balance of PNB LP be adjusted to
account for the possibility that Plaintiff would eventually be
awarded a commission.  As a result of this adjustment, the Former
Partners agreed to be bought out for less than the full amount of
their interests, effectively leaving $700,000.00 in the limited
partnership for the satisfaction of any judgment that Plaintiff
might obtain.  This valuation of the Former Partners' interest
strongly suggests that the PNB LP and PNB Inc. intended to retain
assets sufficient to satisfy in full any liability to Plaintiff.
As of September 2001, the assets of PNB LP and PNB Inc. had
declined to a point where even this $700,000.00 was no longer
available in the event that Plaintiff obtain a money judgment.
Ron V. Briggs, RJ Briggs, and Brian Briggs's argument that the
amount of the liability for the purposes of the insolvency
analysis under Section 3439.05 should now be discounted by the

-32-

court to an amount lower than that originally set aside for the
satisfaction of a potential judgment is inconsistent with the
prior treatment of the liability.  The proposed fifty percent
discounting is not persuasive for this reason as well.

Therefore, because Ron V. Briggs, RJ Briggs, and Brian
Briggs have not set forth an adequate basis on which to discount
the contingent liability owed to Plaintiff, there is a genuine
issue of material fact as to whether PNB Inc. was insolvent at
the time that Ron V. Briggs, RJ Briggs, and Brian Briggs received
the transfers made to them.

Because Ron, RJ and Brian have not presented evidence
showing whether PNB LP or PNB Inc. made the transfers to them,
and because they have not established that under the evidence
they have presented there is no possibility that both PNB LP and
PNB Inc. could have been insolvent, genuine issues of material
fact may exist as to whether the transferring entity was
insolvent at the time that the transfers were made or whether the
transferring entity became insolvent as a result of the
transfers.

## 2.   Section 3439.04(a)(2)

Similarly, with respect to Plaintiff's cause of action under
California Civil Code Section 3439.04(a)(2), Ron Briggs, RJ
Briggs, and Brian Briggs' failure to identify whether PNB LP or
PNB Inc. made the transfers that they admit they received
prevents the court from making a determination as to all elements
of the cause of action.  Without evidence regarding the identity

-33-

of the transferring entity, the court cannot make a determination
that there is no genuine issue of material fact as to whether the
entity received reasonably equivalent value in exchange for the
transfer.  Without evidence regarding the identity of the
transferring entity, the court cannot also determine that there
is no genuine issue of material fact as to whether the
transferring entity was engaged or about to engage in a business
or a transaction for which its remaining assets were unreasonably
small in relation to the business or transaction, and the court
cannot determine whether the transferring entity intended to
incur, or reasonably believed that it would incur debts beyond
its ability to pay as they came due.  Such an analysis is
particularly difficult to undertake without knowing the identity
of the transferring entity because the assets of PNB LP and PNB
Inc. each varied considerably during the period in question.

Again, as with Plaintiff's cause of action under Section
3439.05, Ron Briggs, RJ Briggs, and Brian Briggs' failure to
specify the identity of the transferring entity constitutes a
failure to meet their initial burden of demonstrating that there
are no genuine issues of material fact and that they are entitled
to judgment as a matter of law.

### 3.  Section 3439.04(a)(1)

With respect to Plaintiffs claim for relief under California
Civil Code Section 3439.04(a)(1), Ron Briggs, RJ Briggs, and
Brian Briggs' failure to specify whether PNB LP or PNB Inc. made
the transfers that they admit they received prevents the court

-34-

from determining whether there is a genuine issue of material
fact as to several of the factors set forth under Section
3439.04(b).   In particular, without evidence regarding the
identity of the transferring entity, the court cannot determine
whether any genuine issue of material fact exists as to whether
the transfer was made to an insider, whether the transfer was of
substantially all of the transferring entity's assets, whether
the transferring entity was insolvent or became insolvent shortly
after the transfer was made, and whether the transferring entity
received value reasonably equivalent to the value of the asset
transferred.   These aforementioned factors include some of those
that the court perceives to be the most significant factors
pertaining to actual intent given the facts of this case.   Ron
Briggs, RJ Briggs, and Brian Briggs' failure to specify the
identity of the transferring entity constitutes a failure to meet
their initial burden of demonstrating that there are no genuine
issues of material fact and that they are entitled to judgment as
a matter of law with respect to whether the PNB Inc. made any
transfers to Ron Briggs, RJ Briggs, and Brian Briggs with actual
intent to delay, hinder, or defraud any creditor of the debtor.

## Conclusion

For the reasons stated in the foregoing memorandum decision,
Alexander Briggs is entitled to summary judgment that Plaintiff
take nothing by his claims for relief under California Civil Code
Sections 3439.04(a)(1), (a)(2), and 3439.05, and that Plaintiff

1  shall take nothing by his claim for turnover.  Ron Briggs, RJ
2  Briggs, and Brian Briggs are not entitled to summary judgment on
3  Plaintiff's claims for relief under California Civil Code
4  Sections 3439.04(a)(1), (a)(2) and 3439.05.

The court will issue a separate order.

Dated:  FEB - 7 2008

Thomas C. Holman
United States Bankruptcy Judge

-36-